IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No.

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. APPROXIMATELY $34,485.00 IN UNITED STATES CURRENCY;
2. APPROXIMATELY $1,560.00 IN UNITED STATES CURRENCY;
3. APPROXIMATELY $15,000.00 SEIZED FROM INMATE COLWELL'S KEEFE COMMISSARY ACCOUNT #IN2402061;
4. APPROXIMATELY $5,000.00 IN UNITED STATES CURRENCY;
5. 2013 MASERATI QUATTROPORTE S SEDAN, VIN ZAM39NKA8D0068215;
6. APPROXIMATELY $1,221.64 SEIZED FROM HUNTINGTON NATIONAL BANK ACCOUNT ENDING -3850; AND
7. APPROXIMATELY $26,237.52 SEIZED FROM HUNTINGTON NATIONAL BANK ACCOUNT ENDING -1968;

 Defendants.

---

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

---

The United States of America ("United States"), by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Elizabeth Young, pursuant to Supplemental Rule for Admiralty, Maritime and Asset Forfeiture Actions G(2), states:

JURISDICTION AND VENUE

1. The United States has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881, seeking forfeiture of defendant property based upon violations of the narcotics provisions of 21 U.S.C. § 801, *et seq.* This Court has jurisdiction under 28 U.S.C. §§ 1345 and 1355.

1

2. Venue is proper under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, as the defendant property is located and the acts described herein occurred in the District of Colorado.

## DEFENDANT PROPERTY

3. Defendant approximately $34,485.00 in United States currency ("defendant $34,485.00 in U.S. currency") was seized on May 8, 2024 from the office area of the condo located at 891 14th Street, #1506, Denver, Colorado, and is currently being held by the United States Marshals Service in Denver, Colorado.

4. Defendant approximately $1,560.00 in United States currency ("defendant $1,560.00 in U.S. currency") was seized on May 8, 2024, from Troy Colwell in the parking garage at the Spire Condos building located at 891 14th Street, Denver, Colorado, and is currently being held by the United States Marshals Service in Denver, Colorado.

5. Defendant approximately $15,000.00 seized from inmate Colwell's Keefe Commissary account #IN2402061 ("defendant $15,000.00 in U.S. currency") was seized on May 16, 2024, and is currently being held by the United States Marshals Service in Denver, Colorado.

6. Defendant approximately $5,000.00 in United States currency ("defendant $5,000.00 in U.S. currency") was seized on May 16, 2024, from a Huntington National Bank envelope in Davita Mawulawde's purse, which was in her vehicle at the 3200 Block of Airport Road, Boulder, Colorado, and is currently being held by the United States Marshals Service in Denver, Colorado.

7. Defendant 2013 Maserati Quattroporte S Sedan, VIN

2

ZAM39NKA8D0068215 ("defendant 2013 Maserati") was seized on May 28, 2024, at a parking garage at 2880 Zuni Street, Denver, Colorado, and is currently being held by the United States Marshals Service in Denver, Colorado.

8. Defendant approximately $1,221.64 Seized from Huntington National Bank account ending -3850 ("defendant $1,221.64 in U.S. currency") was seized on August 15, 2024 at the bank branch located at 1709 Sheridan Boulevard, Edgewater, Colorado, from an account held in the name of Davita Lynn Mawulawde and is currently being held by the United States Marshals Service in Denver, Colorado.

9. Defendant approximately $26,237.52 seized from Huntington National Bank account ending -1968 ("defendant $26,237.52 in U.S. currency") was seized on August 15, 2024 at the bank branch located at 1709 Sheridan Boulevard, Edgewater, Colorado, from an account held in the name of Davita Lynn Mawulawde and is currently being held by the United States Marshals Service in Denver, Colorado.

## FACTUAL BASIS FOR FORFEITURE

10. Except as otherwise noted, the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

**Background of Investigation**

11. In the spring of 2024, the Boulder County Drug Task Force ("BCDTF") learned that Troy Colwell at 1020 15th Street #38G in Denver, Colorado, was selling distribution amounts of methamphetamine.

12. Law enforcement officers began investigating Colwell. Throughout the investigation, several people came to the attention of investigators.

13. Tashiana Bynum is Colwell's girlfriend.

14. Armod Hinkle is an associate of Colwell's who attended Colwell's first court appearance after his arrest.

15. Davita Mawulawde is Colwell's sister.

16. Carlo Trujillo is an associate of Colwell's who spoke to Colwell after his arrest.

**Controlled Buys of Methamphetamine**

17. As part of the investigation, a confidential informant ("CI") who had previously purchased methamphetamine from Troy Colwell was utilized to purchased methamphetamine from Colwell. The CI had purchased two to three pounds of methamphetamine from Colwell on seven prior occasions.

**April 18, 2024**

18. On April 18, 2024, law enforcement officers with the BCDTF conducted a controlled purchase of two pounds of methamphetamine from Troy Colwell using the CI. The April 18, 2024 transaction occurred at 1020 15th Street #38G in Denver, Colorado. During the operation, law enforcement officers traveled to 1020 15th Street in Denver with the CI in an undercover police vehicle. They provided the CI with United States currency and consensual recording/transmitting devices. The CI walked into the building through the front doors and was greeted in the lobby by Colwell. Colwell and the CI took the elevator to the 38th floor and entered apartment 38G. The CI gave Colwell $2,800 in exchange for methamphetamine.

19. After completing the transaction with Colwell, the CI exited the apartment, took the elevator to the ground floor, exited the building, and entered the undercover

4

vehicle. The CI provided the law enforcement officers with two large Ziplock style bags that contained a clear crystalline substance believed to be methamphetamine. A law enforcement officer showed the CI a photo of Colwell and the CI confirmed that Colwell was the individual that sold the methamphetamine to the CI. The CI also confirmed that Colwell and the CI entered apartment 38G to conduct the drug transaction. The crystalline substance in both of the Ziplock style bags tested presumptive positive for methamphetamine and weighed slightly under two pounds.

20. On April 24, 2024, law enforcement officers learned that Colwell was moving from his apartment at 1020 15th Street to an unknown location. This information was confirmed when an investigator spoke with management at the apartment complex Colwell was living in. Law enforcement officers learned that Colwell was moving into unit 1506 of the Spire Condos located at 891 14th Street in Denver.

**April 26, 2024**

21. On April 26, 2024, another controlled purchase was completed. Law enforcement officers drove the same CI from Boulder to Denver to complete the purchase from Colwell. While they were driving, the CI texted Colwell and confirmed the meeting location for the drug deal. Colwell told the CI to meet him at the 7-Eleven by his old apartment.

22. At approximately 1:07 pm, law enforcement officers drove the CI to the area of the 7-Eleven at 15th Street and Arapahoe Street in Denver.

23. At approximately 1:16 pm, Colwell contacted the CI and told the CI he was on his way down. A law enforcement officer observed Colwell in the elevator of the Spire Condos at 891 14th Street carrying a blue and yellow bag. A few minutes later,

Colwell exited the Spire Condos building. Colwell texted the CI again indicating that he would see the CI in five minutes. A few minutes later, a law enforcement officer observed Colwell enter the rear passenger door of the undercover vehicle. Colwell exchanged methamphetamine for $2,800. Less than a minute later, Colwell exited the vehicle and walked south on Arapahoe Street.

24. One of the investigators entered the backseat of the undercover vehicle and the CI provided him with a blue and yellow reusable Walmart shopping bag that contained two 1-gallon Ziplock style bags. Inside of these bags was a white crystalline substance consistent with methamphetamine. Law enforcement officers drove the CI back to Boulder. Upon returning to Boulder, law enforcement officers weighed and tested the crystalline substance. Each bag weighed approximately 450 grams and tested presumptive positive for methamphetamine.

**April 26, 2024 Surveillance of Colwell**

25. After Colwell exited the undercover vehicle, law enforcement officers maintained surveillance on him. Colwell walked back to the Spire Condos and entered unit 1506.

26. Later, Colwell left the Spire Condos and went to the Public Storage Facility located at 2025 South Holly Street in Denver, Colorado. Law enforcement officers later learned that Colwell had entered the code for unit P-13 to gain access to the facility.

27. On May 8, 2024, one of the investigators learned that another law enforcement agency had inquired about units P-13 and H-34. The investigator spoke to a law enforcement officer with the Drug Enforcement Administration ("DEA") regarding the storage units. The investigator learned that storage unit P-13 was registered to a

methamphetamine dealer who was known to sell ten pounds of methamphetamine per week.

**Colwell's Arrest and Seizure of Defendant $34,485.00 in U.S. Currency and Defendant $1,560.00 in U.S. Currency**

28.     On May 8, 2024, law enforcement officers arrested Troy Colwell. They found defendant $1,560.00 in U.S. currency on Colwell at the time of his arrest and seized the cash.

29.     Following Colwell's arrest, BCDTF and the Denver Police Department executed a search warrant at 891 14th Street #1506, Colwell's residence. The apartment was a small one-bedroom apartment Colwell shared with his girlfriend, Tashiana Bynum. Bynum was inside the residence and investigators made contact with her at the front door of the residence when they executed the warrant.

30.     Bynum was wearing a black fanny pack. Inside of the fanny pack were the keys to Colwell's 2014 VW Jetta, which was parked in the parking garage of 891 14th Street. Inside of the Jetta investigators found a Taurus 9mm handgun, psilocybin mushrooms, and a methamphetamine pipe.

31.     During the search of the apartment, the following were seized:

    a. Approximately 2895.44 grams of fentanyl pills,

    b. Approximately 71 grams of fentanyl powder,

    c. Approximately 10,462.55 grams of methamphetamine,

    d. Approximately 906 grams of heroin,

    e. Approximately 428.13 grams of cocaine,

    f. defendant $34,485.00 in U.S. currency was bundled in bank bands and

       was seized from the office area of the apartment, and

    g. Two Maserati keys were seized from the office desk, which were later found to open and operate defendant 2013 Maserati.

32. During the search of the apartment, investigators found a money counter in the office along with the vast majority of the narcotics and defendant $34,485.00 in U.S. currency. Law enforcement officers also found numerous bank statements and check books from Huntington National Bank belonging to Troy Colwell. Colwell's accounts at Huntington National Bank were identified as a checking account ending in -1310 and a savings account ending in -6394.

33. Inside of one of the bedroom closets investigators located paperwork for a storage unit at the Storquest storage facility located at 5200 East Evans Avenue in Denver, Colorado. This paperwork showed that, on March 28, 2024, Bynum paid for a lock issued for storage unit 823.

**Colwell's First Court Appearance**

34. On May 9, 2024, Colwell had his first court appearance at the Boulder County Jail. Present for this court appearance was Davita Mawulawde, Colwell's sister, and Armod Hinkle. During this hearing, pictures of the narcotics found in Colwell's apartment during the search were shown to the court. Both Hinkle and Mawulawde were present when Colwell's case was heard and had direct knowledge of what he was charged with.

**Colwell's May 10, 2024 Jail Calls and the Huntington National Bank Accounts**

35. On May 10, 2024, Colwell had several jail phone calls with an unknown male and an unknown female. The female in these phone calls was later identified as

8

Colwell's sister, Davita Mawulawde. The male was later identified as Armod Hinkle. Both Mawulawde and Hinkle attended Colwell's initial court appearance on May 9, 2024.

36. On May 10, 2024, Colwell placed a call at approximately 8:30am to Mawulawde. The phone call appeared to be on speaker phone with both Mawulawde and Hinkle. During this call, Colwell stated: "Davita, hopefully you can go to the bank with that power of attorney and get the money out." Later in the conversation, Hinkle replied: "We are doing are [sic] executing everything we possibly can right now."

37. During this phone call, Colwell told the female that she had power of attorney and instructed her to withdrawal large amounts of money from his savings and checking bank accounts.

38. On May 10, 2024, law enforcement officers obtained a warrant freezing the bank accounts held in Colwell's name at Huntington National Bank. The signed warrant was submitted to Huntington National Bank at approximately 12:30 pm. A short time later, a law enforcement officer was notified by an employee of Huntington National Bank that Colwell's sister, Davita Mawulawde, had closed out Colwell's accounts and transferred all the money from his savings and checking accounts to her account. The bank employee stated that Davita Mawulawde transferred $21,533.01 and $20,680.52 from Colwell's two Huntington National Bank accounts to her account ending in -1968. A warrant to freeze the account held in the name of Davita Mawulawde ending in -1968 was obtained by law enforcement officers.

39. On May 10, 2024, Colwell placed another call from the Boulder County Jail at approximately 5:11 pm. This call also was on speakerphone with both

Mawulawde and Hinkle. Colwell asked Mawulawde: "You remember last time when I had to pay my lawyer, how that went?" Mawulawde responded, "Yeah I do." Colwell replied, "Do that again Monday ASAP." Colwell later stated: "Go to where you opened the bank account for me." Mawulawde replied, "I already did that." Colwell later instructed Hinkle and Mawulawde to have his girlfriend, Bynum, get ahold of "that guy tonight because he can get what I need."

40. On May 10, 2024, at approximately 7:28 pm Colwell placed another call on speaker phone with Mawulawde, Hinkle, and Bynum. During this call, Colwell directed Bynum to go to his friend's house and described the location to her. Colwell told Bynum, Mawulawde, and Hinkle that this friend "knows where to go". Hinkle replied, "We're doing that right now for ya." Colwell told them that there were a couple of boxes with tape where they were supposed to go. Colwell told them that they needed to open the boxes.

**May 11-13, 2024 Jail Calls and 303 Storage**

41. On May 11, 2024, Colwell spoke to Mawulawde, Hinkle, and Bynum by telephone. Colwell directed Bynum to contact his friend and for the friend to get the backpacks and boxes with tape. Colwell told Bynum to tell the friend that he can keep the backpacks, but to give the boxes with tape to Colwell's sister. Bynum provided a phone number to Colwell, which was later confirmed to be Carlo Trujillo's telephone number.

42. On May 11, 2024, during a phone call, Colwell stated to a male, later identified as Carlo Trujillo, that they needed to get to Colwell's storage unit. Colwell identified his storage unit as #800 at 303 Storage. Colwell also told Trujillo that he had

another item they needed to get out of unit 571, but this item was not as important to him as the items in unit 800.

43. Law enforcement officers identified the storage facility as the 303 Storage located at 3270 Blake Street in Denver, Colorado.

44. On May 11, 2024 at approximately 10:36 a.m., Colwell called his sister, Mawulawde. Both Mawulawde and Hinkle answered the call. Colwell instructed them to call his "buddy right now." He provided the phone number for Trujillo and told them that they needed to go to the storage unit with Mawulawde's power of attorney right now. Colwell told Mawulawde and Hinkle that this storage unit is at 303 Storage.

45. On May 12, 2024 at approximately 2:19 pm., Colwell placed a call to Mawulawde, during this call Colwell stated, "We gotta get that thing." Mawulawde replied, "I know we gotta get it done." Colwell explained to Mawulawde that he needed to get the power of attorney issue resolved.

46. On May 12, 2024 at approximately 7:32 p.m., Colwell placed a call to Hinkle. During this call, Hinkle told Colwell: "It's handled." Hinkle told Colwell that he wanted to pay Colwell's attorney in full. Colwell described to Hinkle how to utilize the money taken out of the storage unit.

47. On May 13, 2024, a law enforcement officer called 303 Storage and spoke with staff there. The staff stated that Colwell did rent a unit there and it was unit 800. They stated that they believed they had seen Colwell bring guns into this storage unit in the past, and he had last accessed it on April 29, 2024. They also stated that on Saturday May 11, 2024, other individuals were trying to access Colwell's unit. The staff also stated that the individuals were unable to gain access to the unit because they did

11

not possess the keys. The staff stated that that morning, May 13, 2024, a female identified as "Davita" claimed to be Colwell's sister and provided a power of attorney dating from 2018. The staff said that Davita was attempting to gain access to the storage units. The staff advised the law enforcement officers that they could not accept the power of attorney because it was from before Colwell was a renter of any units in their facility.

48. An investigator asked the staff at 303 Storage if they rented any units to Armod Hinkle. They responded that they rented a unit to Armod Hinkle the previous day, May 12, 2024. 303 Storge staff advised law enforcement officers that Hinkle's unit shared a wall with Colwell's unit. During the execution of a search warrant on unit 800, law enforcement officers learned that Hinkle and Trujillo had utilized a rope ladder to gain access to Colwell's unit and remove the items that Colwell had been concerned about. 303 Storage staff provided detectives with a photograph of the inside of Hinkle's unit, which showed that a rope ladder was the only item inside the unit. Law enforcement officers did not locate any contraband in unit 800, the unit rented to Colwell.

**Seizure of Defendant $15,000.00 in U.S. Currency and Defendant $5,000.00 in U.S. Currency**

49. On May 15, 2024, law enforcement officers observed Davita Mawulawde drive to the Boulder County Jail. On May 16, 2024, an investigator learned from deputies at the jail that Mawulawde had made two deposits into Troy Colwell's Keefe Group account while she was there. Records showed that on May 15, 2024, while Mawulawde was at the jail, there were two deposits into Colwell's Keefe Group commissary account: $14,970.00 in United States currency and $6,930.00 in United

12

States currency, for a total of $21,900.00. On May 15, 2024, when Mawulawde left the jail, law enforcement officers maintained surveillance on her.

50. On May 16, 2024, surveillance on Mawulawde continued. A law enforcement officer observed her enter the Huntington National Bank located at 1709 North Sheridan Boulevard in Edgewater, Colorado. A short time after Mawulawde left the bank, an investigator spoke with staff inside. He was told by two of the tellers that Mawulawde had just withdrawn $5,000.00 in United States currency from an account. The investigator told them that her account was supposed to be frozen. Both tellers told him that they could see that there was a court order attached to the account, but they did not know what it was. They also told him that on May 15, 2024, Mawulawde had withdrawn $15,000.00 in cash from this account.

51. On May 16, 2024, at approximately 11:00 a.m., Mawulawde drove a rental car from Huntington National Bank to the Boulder County Jail. A traffic stop was initiated and defendant $5,000.00 in U.S. currency was found in a Huntington National Bank envelope. Mawulawde stated that the money had come from Huntington bank. Defendant $5,000.00 in U.S. currency was seized.

52. On May 16, 2024, law enforcement officers obtained a seizure warrant for the $15,000.00 in United States currency Mawulawde had deposited into Colwell's Keefe Group commissary account. These seized funds constitute defendant $15,000.00 in U.S. currency.

53. On May 17, 2024, investigators spoke to a Huntington National Bank employee. The employee confirmed that on May 15, 2024, Mawulawde withdrew $15,000.00 in United States currency from her account. The employee also told

13

investigators that on May 10, 2024, Mawulawde transferred $3,130.52 from account ending -6394 to another one of her accounts ending in -3850.

54. On May 21, 2024, law enforcement officers obtained a warrant to freeze Huntington National Bank account ending -3850.

**May 24, 2024 Interview of Tashiana Bynum**

55. On May 24, 2024, Colwell's girlfriend, Tashiana Bynum, was arrested in Aurora on an arrest warrant for four counts of possession with intent to distribute. While at the Aurora Detention Center, Bynum agreed to speak with law enforcement officers.

56. Bynum explained that Carlo, who investigators had identified as Carlo Trujillo, was Colwell's best friend. She stated that Trujillo, Hinkle, Mawulawde, and herself had gone to the 303 Storage located at 3270 Blake Street in Denver, Colorado, on May 11, 2024. Bynum stated that they were unable to gain access to Colwell's storage unit at that time. Bynum stated that later, Trujillo and Hinkle went back to the storage facility and emptied Colwell's unit of boxes containing drugs and money. Bynum told investigators that Hinkle had told her a lot of drugs and money were inside Colwell's storage unit. Bynum stated that Hinkle told her that they did "Ninja shit," to get the contraband out of Colwell's storage unit. Bynum also informed investigators that Hinkle had moved into Colwell's and her old apartment located at 1020 15th Street #38G in Denver.

**Seizure of Defendant 2013 Maserati**

57. On May 28, 2024, a search and seizure warrant was executed at a parking garage at 2880 Zuni Street, Denver, Colorado, and defendant 2013 Maserati was seized. Investigators found a receipt with Troy Colwell's name on it inside the

14

vehicle.

58. Law enforcement officers identified and interviewed the prior owner of defendant 2013 Maserati. The prior owner told investigators that he met with Troy Colwell on April 17, 2024 or April 18, 2024 for a test drive of the vehicle and they agreed on a price of $20,500, which Colwell was to pay in cash. On April 20, 2024, Colwell purchased defendant 2013 Maserati from the prior owner. The prior owner reported that Cowell paid in cash and most of the cash was split into stacks of $1,000 consisting of mostly small bills: 4-6 $100 bills, $300 in $20 bills, and the rest was in $10 and $5 bills. The previous owner stated that the currency used to pay for the vehicle was bundled in bank bands. The previous owner stated that he signed over the title to Colwell.

**Seizure of Defendant $1,221.64 in U.S. Currency and Defendant $26,237.52 in U.S. Currency**

59. On August 14, 2024, seizure warrants were executed at the Huntington National Bank at 1709 Sheridan Boulevard, Edgewater, Colorado. Defendant $1,221.64 in U.S. currency was seized from Huntington National Bank account ending -3850 and defendant $26,237.52 in U.S. currency was seized from Huntington National Bank account ending -1968.

**Criminal Cases**

60. On May 9, 2024, Troy Colwell was charged in *The People of the State of Colorado v. Troy Delman Colwell*, Boulder County case number 2024R000768. On October 9, 2024, the Boulder County court granted a change of venue from Boulder County to Denver County. The Denver County case number is 2024CR15143.

61. On May 31, 2024, Davita Mawulawde was charged in *The People of the*

15

*State of Colorado v. Davita Lynn Mawulawde*, Boulder County case number 2024R000893.

**Claims**

62.   After the defendant assets were seized, the DEA initiated administrative forfeiture as to each asset. As part of that process, the DEA sent notice of the forfeiture of the assets to potential claimants.

63.   On September 9, 2024, Troy Colwell filed a claim asserting an interest in defendant $34,485.00 in U.S. currency, defendant $15,000 in U.S. currency, defendant $5,000.00 in U.S. currency, and defendant $1,560.00 in U.S. currency.

64.   On September 9, 2024, Davita Mawulawde filed a claim asserting an interest in defendant $5,000.00 in U.S. currency and defendant 2013 Maserati.

65.   On October 28, 2024, Troy Colwell filed a second claim asserting an interest in defendant $26,237.52 in U.S. currency.

66.   On October 28, 2024, Davita Mawulawde filed a second claim asserting an interest in defendant $1,221.64 in U.S. currency.

67.   The claims were referred to the United States Attorney's Office for initiation of a judicial forfeiture proceeding.

**Conclusion**

68.   Based on the facts and circumstances described above, evidence shows that the defendant assets were derived from or involved in illegal drug trafficking.

## VERIFICATION OF JOSHUA ATWELL
## SPECIAL AGENT, DRUG ENFORCEMENT ADMINISTRATION

I, Special Agent Joshua Atwell, hereby state and aver under the pains and penalties of perjury that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true.

JOSHUA ATWELL
Digitally signed by JOSHUA ATWELL
Date: 2024.12.04 19:39:19 -07'00'

Joshua Atwell
Special Agent - DEA

### FIRST CLAIM FOR RELIEF

69.  The Plaintiff repeats and incorporates by reference the paragraphs above.

70.  By the foregoing and other acts, defendant approximately $34,485.00 in United States currency constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### SECOND CLAIM FOR RELIEF

71.  The Plaintiff repeats and incorporates by reference the paragraphs above.

72.  By the foregoing and other acts, defendant approximately $1,560.00 in United States currency constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### THIRD CLAIM FOR RELIEF

73. The Plaintiff repeats and incorporates by reference the paragraphs above.

74. By the foregoing and other acts, defendant approximately $15,000.00 seized from inmate Colwell's Keefe commissary account #IN2402061 constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### FOURTH CLAIM FOR RELIEF

75. The Plaintiff repeats and incorporates by reference the paragraphs above.

76. By the foregoing and other acts, defendant approximately $5,000.00 in United States currency constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### FIFTH CLAIM FOR RELIEF

77. The Plaintiff repeats and incorporates by reference the paragraphs above.

78. By the foregoing and other acts, defendant 2013 Maserati Quattroporte S Sedan, VIN ZAM39NKA8D0068215 constitutes or was derived from proceeds traceable to an exchange of controlled substance in violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### SIXTH CLAIM FOR RELIEF

79. The Plaintiff repeats and incorporates by reference the paragraphs above.

80. By the foregoing and other acts, defendant approximately $1,221.64 seized from Huntington National Bank account ending -3850 constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

### SEVENTH CLAIM FOR RELIEF

81. The Plaintiff repeats and incorporates by reference the paragraphs above.

82. By the foregoing and other acts, defendant approximately $26,237.52 seized from Huntington National Bank account ending -1968 constitutes funds furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or funds used or intended to be used to facilitate a violation of 21 U.S.C. § 801, *et seq.*, and is therefore forfeitable to the United Stated pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the above listed defendant assets in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

Dated: December 5, 2024

        Respectfully submitted,

        MATTHEW T. KIRSCH
        Acting United States Attorney

        By: */s/ Elizabeth Young*
        Elizabeth Young
        Assistant United States Attorney
        United States Attorney's Office
        1801 California Street, Suite 1600
        Denver, Colorado 80202
        Telephone: (303) 454-0100
        Fax: (303) 454-0402
        E-mail: Elizabeth.Young2@usdoj.gov
        *Attorney for the United States*